TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0141
    E-mail:    Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
FILED
CLERK, U.S. DISTRICT COURT

4/23/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-   2:21-cr-00200-RGK |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT FOR DEFENDANT ZHENYI QI |
| ZHENYI QI, | |
| Defendant. | |

    1.   This constitutes the plea agreement between ZHENYI QI ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

1          a.    Give up the right to indictment by a grand jury and,

2    at the earliest opportunity requested by the USAO and provided by the

3    Court, appear and plead guilty to a single-count information in the

4    form attached to this agreement as Exhibit A or a substantially

5    similar form, in United States v. Zhenyi Qi, which charges defendant

6    with Conspiracy to Make False Entries in Bank Records, in violation

7    of 18 U.S.C. §§ 371 and 1005.

8          b.    Not contest facts agreed to in this agreement.

9          c.    Abide by all agreements regarding sentencing contained

10   in this agreement.

11         d.    Appear for all court appearances, surrender as ordered

12   for service of sentence, obey all conditions of any bond, and obey

13   any other ongoing court order in this matter.

14         e.    Agree that all court appearances, including his change

15   of plea hearing and sentencing hearing, may proceed by video-

16   teleconference ("VTC") or telephone, if VTC is not reasonably

17   available, so long as such appearances are authorized by Orders of

18   the Chief Judge 20-043 and 20-186 or another order, rule, or statute.

19   Defendant understands that, under the Constitution, the United States

20   Code, the Federal Rules of Criminal Procedure (including Rules 11,

21   32, and 43), he may have the right to be physically present at these

22   hearings.  Defendant understands that right and, after consulting

23   with counsel, voluntarily agrees to waive it and to proceed remotely.

24   Defense counsel also joins in this consent, agreement, and waiver.

25   Specifically, this agreement includes, but is not limited to, the

26   following:

27              i.    Defendant consents under Section 15002(b) of the

28   Coronavirus Aid, Relief, and Economic Security ("CARES") Act to

2

proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii.  Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

f.   Not commit any crime, however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.   Be truthful at all times with the United States Probation and Pretrial Services Office ("USPO") and the Court.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To the entry as part of defendant's guilty plea of a personal money judgment of forfeiture against defendant in the amount of $90,000, which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis of the plea agreement.  Defendant understands that the money judgment of

3

1   forfeiture is part of defendant's sentence, and is separate from any

2   fines or restitution that may be imposed by the Court.

3           b.   To forfeit all right, title, and interest in and to

4   any and all monies, properties, and/or assets of any kind, derived

5   from or acquired as a result of, or used to facilitate the commission

6   of, or involved in the illegal activity to which defendant is

7   pleading guilty (collectively, the "Forfeitable Assets").

8           c.   To take whatever steps are necessary to pass to the

9   United States clear title to the Forfeitable Assets, including,

10  without limitation, the execution of a consent decree of forfeiture

11  and the completing of any other legal documents required for the

12  transfer of title to the United States.

13          d.   Not to contest any administrative forfeiture

14  proceedings or civil judicial proceedings commenced against the

15  Forfeitable Assets.  If defendant submitted a claim and/or petition

16  for remission for all or part of the Forfeitable Assets on behalf of

17  himself or any other individual or entity, defendant shall and hereby

18  does withdraw any such claims or petitions, and further agrees to

19  waive any right he may have to seek remission or mitigation of the

20  forfeiture of the Forfeitable Assets.

21          e.   Not to assist any other individual in any effort

22  falsely to contest the forfeiture of the Forfeitable Assets.

23          f.   Not to claim that reasonable cause to seize the

24  Forfeitable Assets was lacking.

25          g.   To prevent the transfer, sale, destruction, or loss of

26  any and all assets described above to the extent defendant has the

27  ability to do so.

28

1      h.   To fill out and deliver to the USAO a completed

2   financial statement listing defendant's assets on a form provided by

3   the USAO.

4      i.   That forfeiture of Forfeitable Assets shall not be

5   counted toward satisfaction of any special assessment, fine,

6   restitution, costs, or other penalty the Court may impose.

7   4.   Defendant further agrees to cooperate fully with the USAO,

8   the United States Department of Homeland Security – Homeland Security

9   Investigations ("HSI"), and, as directed by the USAO, any other

10  federal, state, local, or foreign prosecuting, enforcement,

11  administrative, or regulatory authority.  This cooperation requires

12  defendant to:

13     a.   Respond truthfully and completely to all questions

14  that may be put to defendant, whether in interviews, before a grand

15  jury, or at any trial or other court proceeding.

16     b.   Attend all meetings, grand jury sessions, trials or

17  other proceedings at which defendant's presence is requested by the

18  USAO or compelled by subpoena or court order.

19     c.   Produce voluntarily all documents, records, or other

20  tangible evidence relating to matters about which the USAO, or its

21  designee, inquires.

22  5.   For purposes of this agreement: (1) "Cooperation

23  Information" shall mean any statements made, or documents, records,

24  tangible evidence, or other information provided, by defendant

25  pursuant to defendant's cooperation under this agreement as well as

26  pursuant to the letter agreement previously entered into by the

27  parties dated February 8, 2021 (the "Letter Agreement"); and

28  (2) "Plea Information" shall mean any statements made by defendant,

1 │ under oath, at the guilty plea hearing and the agreed to factual
2 │ basis statement in this agreement.

3 │                            THE USAO'S OBLIGATIONS

4 │     6.    The USAO agrees to:

5 │          a.    Not contest facts agreed to in this agreement.

6 │          b.    Abide by all agreements regarding sentencing contained
7 │ in this agreement.

8 │          c.    At the time of sentencing, provided that defendant
9 │ demonstrates an acceptance of responsibility for the offense up to
10 │ and including the time of sentencing, recommend a two-level reduction
11 │ in the applicable Sentencing Guidelines offense level, pursuant to
12 │ U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
13 │ additional one-level reduction if available under that section.

14 │          d.    Except for criminal tax violations (including
15 │ conspiracy to commit such violations chargeable under 18 U.S.C.
16 │ § 371), not further criminally prosecute defendant for violations of
17 │ 18 U.S.C. §§ 215(a)(2) (bank bribery), 1341 (mail fraud), 1343 (wire
18 │ fraud), 1344 (bank fraud), 1349 (conspiracy to violate 1341, 1343,
19 │ and 1344), and 1028A (aggravated identity theft) arising out of
20 │ defendant's conduct described in the agreed-to factual basis set
21 │ forth in this agreement.  Defendant understands that the USAO is free
22 │ to criminally prosecute defendant for any other unlawful past conduct
23 │ or any unlawful conduct that occurs after the date of this agreement.
24 │ Defendant agrees that at the time of sentencing the Court may
25 │ consider the uncharged conduct in determining the applicable
26 │ Sentencing Guidelines range, the propriety and extent of any
27 │ departure from that range, and the sentence to be imposed after

28 │

                                        6

consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 10 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

7.   The USAO further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the

1    sentence to be imposed, and to recommend to the Court that

2    Cooperation Information not be used in determining the applicable

3    guideline range or the sentence to be imposed.  Defendant

4    understands, however, that Cooperation Information will be disclosed

5    to the USPO and the Court, and that the Court may use Cooperation

6    Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for

7    determining the sentence to be imposed.

8            c.    In connection with defendant's sentencing, to bring to

9    the Court's attention the nature and extent of defendant's

10   cooperation.

11           d.    If the USAO determines, in its exclusive judgment,

12   that defendant has both complied with defendant's obligations under

13   paragraphs 2 through 5 above and provided substantial assistance to

14   law enforcement in the prosecution or investigation of another

15   ("substantial assistance"), to move the Court pursuant to U.S.S.G.

16   § 5K1.1 to fix an offense level and corresponding guideline range

17   below that otherwise dictated by the sentencing guidelines, and to

18   recommend a term of imprisonment within this reduced range.

19           <u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

20       8.   Defendant understands the following:

21           a.    Any knowingly false or misleading statement by

22   defendant will subject defendant to prosecution for false statement,

23   obstruction of justice, and perjury and will constitute a breach by

24   defendant of this agreement.

25           b.    Nothing in this agreement requires the USAO or any

26   other prosecuting, enforcement, administrative, or regulatory

27   authority to accept any cooperation or assistance that defendant may

28   offer, or to use it in any particular way.

8

1        c.   At this time the USAO makes no agreement or

2    representation as to whether any cooperation that defendant has

3    provided or intends to provide constitutes or will constitute

4    substantial assistance.  The decision whether defendant has provided

5    substantial assistance will rest solely within the exclusive judgment

6    of the USAO.

7        d.   The USAO's determination whether defendant has

8    provided substantial assistance will not depend in any way on whether

9    the government prevails at any trial or court hearing in which

10   defendant testifies or in which the government otherwise presents

11   information resulting from defendant's cooperation.

12   <u>NATURE OF THE OFFENSE</u>

13   9.   Defendant understands that to be guilty of the crime of

14   making false entries in bank records in violation of Title 18, United

15   States Code, Section 1005, the following must be true:

16       a.   The defendant made, or conspired to make, a false

17   entry in the records of an insured bank;

18       b.   The defendant knew the entry was false when it was

19   made; and

20       c.   The defendant intended that the entry injure or

21   defraud the bank, or deceive any officer of such bank.

22   10.   Defendant further understands that to be guilty of the

23   crime charged in the single-count information, that is, conspiracy to

24   make false entries in bank records in violation of Title 18, United

25   States Code, Sections 371 and 1005, the following must be true:

26       a.   There was an agreement between two or more persons to

27   commit the crime of making false entries in bank records in violation

28   of Title 18, United States Code, Section 1005;

b.   Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.   One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

<u>PENALTIES</u>

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 371 and 1005 is: a five year period of imprisonment; a three year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a

professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

15.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the

1   underlying criminal conduct or all facts known to either party that

2   relate to that conduct.

3         Defendant was employed by Bank of America, N.A. ("BofA"), as a

4   Personal Banker in the Bank of America branch in Rosemead,

5   California, within the Central District of California.  BofA was a

6   financial institution insured by the Federal Deposit Insurance

7   Corporation.  In accordance with federal regulations, BofA maintained

8   Anti-Money Laundering and Customer Identification Policies (the "AML-

9   CIP Program") which imposed certain requirements on BofA employees,

10  including defendant, when opening new customer bank accounts.

11        The AML-CIP Programs required BofA employees opening new bank

12  accounts to: (a) require new, non-resident alien applicants ("NRA

13  Applicants") to provide their physical residency information within

14  the United States, and verify the identities and physical residency

15  information; and (b) that accounts be opened only for owners or

16  signers who were present, in person, at a financial center or bank-

17  approved offsite events.  As an employee of BofA, defendant's

18  compliance with the AML-CIP Programs was material to BofA, and

19  defendant was trained on these AML-CIP Programs and certified his

20  understanding of the same.

21        Beginning on an unknown date and continuing through at least on

22  or about July 24, 2020, in Los Angeles County, within the Central

23  District of California, and elsewhere, defendant conspired and agreed

24  with others to knowingly and intentionally enter false information

25  into the books and records of AML-CIP Programs.  Defendant knowingly

26  agreed to participate, and did participate, in a scheme whereby

27  defendant would use his position at BofA to make false entries in the

28

1  books and records of BofA as to material matters, in return for
2  compensation paid by his co-conspirators.

3        The scheme was operated and was carried out, in substance, in
4  the following manner:

5        Defendant provided account opening services to potential BofA
6  customers, including NRA Applicants, as part of his employment by
7  BofA.  Defendant was approached by Co-conspirator 1 ("CC1") and Co-
8  conspirator 2 ("CC2"), who offered to pay defendant to open accounts
9  at BofA for NRA Applicants located in the People's Republic of China
10 and Hong Kong in a manner that would circumvent the AML-CIP Program.
11 CC1 and CC2 offered to pay defendant approximately $200-250 per
12 account opened through electronic payment applications, including
13 Alipay.  Specifically, defendant, CC1, and CC2 agreed to open
14 accounts at BofA for NRA Applicants using false residency
15 information, which defendant knew was false and were neither the true
16 residency addresses for the NRA Applicants.  Defendant also opened
17 accounts for which the NRA Applicants were the owners and signers of
18 the new accounts without requiring that the NRA Applicants be
19 present, in person, at a financial center or bank-approved offsite
20 events.  Defendant would also use the credentials of at least one
21 other BofA employee to open accounts for the NRA Applicants.  By
22 using another BofA employee's credentials, QI caused the BofA systems
23 to misidentify the BofA employee(s) responsible for the new account
24 openings, and enabled QI to further hide his involvement in the
25 conspiracy.

26       In total, the fraudulent scheme carried out by defendant and his
27 coconspirators resulted in at least 400 bank accounts opened at BofA

28

13

1   for the NRA Applicants in violation of the AML-CIP Program and

2   federal regulations.

3       Defendant and the USAO agree that the loss amount to BofA

4   resulting from defendant's conduct cannot reasonably be determined as

5   of the date of this agreement, but agree that defendant's gain

6   resulting from defendant's conduct was between $40,000 and $95,000.

7                       SENTENCING FACTORS

8       16.  Defendant understands that in determining defendant's

9   sentence the Court is required to calculate the applicable Sentencing

10  Guidelines range and to consider that range, possible departures

11  under the Sentencing Guidelines, and the other sentencing factors set

12  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

13  Sentencing Guidelines are advisory only, that defendant cannot have

14  any expectation of receiving a sentence within the calculated

15  Sentencing Guidelines range, and that after considering the

16  Sentencing Guidelines and the other § 3553(a) factors, the Court will

17  be free to exercise its discretion to impose any sentence it finds

18  appropriate up to the maximum set by statute for the crime of

19  conviction.

20      17.  Defendant and the USAO agree to the following applicable

21  Sentencing Guidelines factors:

22      Base Offense Level:          6        U.S.S.G. § 2B1.1(a)(2)

23      Gain Amount $40,000-$95,000   +6    U.S.S.G. § 2B1.1(b)(1)(D)

24      Acceptance of Responsibility  -2            U.S.S.G. § 3E1.1

25  Defendant and the USAO reserve the right to argue that additional

26  specific offense characteristics, adjustments, and departures under

27  the Sentencing Guidelines are appropriate.  Defendant understands

28  that defendant's offense level could be increased if defendant is a

career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   The Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel--and if necessary have the Court appoint counsel--at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel--and if necessary have the Court appoint counsel--at every other stage of the proceeding.

    d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.   The right to confront and cross-examine witnesses against defendant.

    f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

22.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court;

1   the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

2   3583(d); and the alcohol and drug use conditions authorized by 18

3   U.S.C. § 3563(b)(7).

4       23.   Defendant also gives up any right to bring a post-

5   conviction collateral attack on the conviction or sentence, including

6   any order of restitution, except a post-conviction collateral attack

7   based on a claim of ineffective assistance of counsel or an

8   explicitly retroactive change in the applicable Sentencing

9   Guidelines, sentencing statutes, or statutes of conviction. Defendant

10  understands that this waiver includes, but is not limited to,

11  arguments that the statutes to which defendant is pleading guilty are

12  unconstitutional, that newly discovered evidence purportedly supports

13  defendant's innocence, and any and all claims that the statement of

14  facts provided herein is insufficient to support defendant's plea of

15  guilty.

16      24.   This agreement does not affect in any way the right of the

17  USAO to appeal the sentence imposed by the Court.

18                  RESULT OF WITHDRAWAL OF GUILTY PLEA

19      25.   Defendant agrees that if, after entering a guilty plea

20  pursuant to this agreement, defendant seeks to withdraw and succeeds

21  in withdrawing defendant's guilty plea on any basis other than a

22  claim and finding that entry into this plea agreement was

23  involuntary, then (a) the USAO will be relieved of all of its

24  obligations under this agreement, including in particular its

25  obligations regarding the use of Cooperation Information; (b) in any

26  investigation, criminal prosecution, or civil, administrative, or

27  regulatory action, defendant agrees that any Cooperation Information

28  and any evidence derived from any Cooperation Information shall be

admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible. inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

26.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

1  may declare this agreement breached.  For example, if defendant

2  knowingly, in an interview, before a grand jury, or at trial, falsely

3  accuses another person of criminal conduct or falsely minimizes

4  defendant's own role, or the role of another, in criminal conduct,

5  defendant will have breached this agreement.  All of defendant's

6  obligations are material, a single breach of this agreement is

7  sufficient for the USAO to declare a breach, and defendant shall not

8  be deemed to have cured a breach without the express agreement of the

9  USAO in writing.  If the USAO declares this agreement breached, and

10  the Court finds such a breach to have occurred, then:

11        a.   If defendant has previously entered a guilty plea

12  pursuant to this agreement, defendant will not be able to withdraw

13  the guilty plea.

14        b.   The USAO will be relieved of all its obligations under

15  this agreement; in particular, the USAO: (i) will no longer be bound

16  by any agreements concerning sentencing and will be free to seek any

17  sentence up to the statutory maximum for the crime to which defendant

18  has pleaded guilty; (ii) will no longer be bound by any agreements

19  regarding criminal prosecution, and will be free to criminally

20  prosecute defendant for any crime, including charges that the USAO

21  would otherwise have been obligated to not criminally prosecute

22  pursuant to this agreement; and (iii) will no longer be bound by any

23  agreement regarding the use of Cooperation Information and will be

24  free to use any Cooperation Information in any way in any

25  investigation, criminal prosecution, or civil, administrative, or

26  regulatory action.

27

28

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

30.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the USPO and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the USPO and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason,

withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be at or below the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1

2           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

3       34.   The parties agree that this agreement will be considered

4   part of the record of defendant's guilty plea hearing as if the

5   entire agreement had been read into the record of the proceeding.

6   AGREED AND ACCEPTED

7   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
8   CALIFORNIA

9   TRACY L. WILKISON
    Acting United States Attorney

10                                          4/23/21

11   _D. Boyle_____          _____
    DAN G. BOYLE                        Date
12   Assistant United States Attorney

13   _____           _4-22-21_____
    ZHENYI QI                           Date
14   Defendant

15   _R. Dane Corrt_____              _4-22-21_____
    R. DARREN CORNFORTH                 Date
16   Attorney for Defendant ZHENYI QI

17

18

19

20

21

22

23

24

25

26

27

28

                              23

1                    CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney.  I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement.  No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement.  No one has threatened or forced me in

14   any way to enter into this agreement.  I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charge and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19   _____        4-22-21
                                            _____
20   ZHENYI QI                              Date
     Defendant

21

22                   CERTIFICATION OF INTERPRETER

23        I, _Lei Arellano_, am fluent in the written and spoken

24   English and Chinese languages.  I accurately translated this entire

25   agreement from English into Chinese to defendant ZHENYI QI on this

26   date.

27   _____        4/22/2021
                                            _____
28   INTERPRETER                            Date

                              24

1

2

## CERTIFICATION OF DEFENDANT'S ATTORNEY

3       I am ZHENYI QI's attorney.  I have carefully and thoroughly

4  discussed every part of this agreement with my client.  Further, I

5  have fully advised my client of his rights, of possible pretrial

6  motions that might be filed, of possible defenses that might be

7  asserted either prior to or at trial, of the sentencing factors set

8  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

9  provisions, and of the consequences of entering into this agreement.

10  To my knowledge: no promises, inducements, or representations of any

11  kind have been made to my client other than those contained in this

12  agreement; no one has threatened or forced my client in any way to

13  enter into this agreement; my client's decision to enter into this

14  agreement is an informed and voluntary one; and the factual basis set

15  forth in this agreement is sufficient to support my client's entry of

16  a guilty plea pursuant to this agreement.

17

18   _R. Darren Cornforth_                    _4-22-21_

19   R. DARREN CORNFORTH                       Date
    Attorney for Defendant ZHENYI QI

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>ZHENYI QI,<br><br>       Defendant. | CR No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy to Make False Entries in Bank Records] |

The Acting United States Attorney charges:

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant ZHENYI QI was an employee of Bank of America, N.A. ("BofA") employed in and around Rosemead, California.

2.   BofA was a financial institution insured by the Federal Deposit Insurance Corporation.

3.   In accordance with federal regulations, including 31 CFR § 1020.220, BofA maintained Anti-Money Laundering and Customer Identification Policies (the "AML-CIP Program") which imposed certain requirements on employees when opening new customer bank accounts.

4.   As an employee of Bank of America, defendant QI provided account opening services to potential BofA customers as part of his employment by BofA.  Defendant QI's compliance with the AML-CIP Program in providing those services was material to BofA.

B.   THE OBJECT OF THE CONSPIRACY

5.   Beginning on an unknown date and continuing through at least on or about July 24, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant QI conspired with others known and unknown to commit an offense against the United States, namely, making false entries in the books, reports, and statements of BofA, in violation of Title 18, United States Code, Section 1005.

C.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

6.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Non-resident aliens located in the People's Republic of China and Hong Kong wished to open bank accounts at BofA, but were unwilling or unable to do so in accordance with the AML-CIP Program (the "NRA Applicants").

b.   Co-Conspirator 1 ("CC1") and Co-Conspirator 2 ("CC2"), together with known and unknown co-conspirators, would obtain copies of passports from the NRA Applicants (the "NRA Passports") to be used to open accounts at BofA without following the AML-CIP Program.

c.   CC1 and CC2 would forward copies of the NRA Passports to defendant QI in order to open accounts for the NRA Applicants in contravention of the AML-CIP Program.

     d.   Using the Alipay electronic payment application, CC1 would pay defendant QI an agreed-upon amount for each BofA account QI opened for the NRA Applicants in contravention of the AML-CIP Program.

     e.   Knowing that the AML-CIP Program required that potential accountholders who were non-resident aliens to be physically present in a BofA financial center or bank-approved offsite event to open a bank account, defendant QI would use his own BofA credentials, or the BofA credentials of other BofA employees, to open accounts for the NRA Applicants, who were the owners and signers of these new accounts, without requiring the NRA Applicants to be present, in person, at a BofA financial center or bank-approved offsite event, in violation of the requirements of BofA's AML-CIP Program.

     f.   Knowing that the AML-CIP Program required that potential accountholders provide physical residency information and proof of identity, and that he was required to verify such information, defendant QI would knowingly enter false residency information into BofA systems by entering Rosemead, California or San Marino, California as the city and state of residency for the NRA Applicants, when defendant QI knew the NRA Applicants did not reside in these locations.

     g.   Knowing that BofA employees were required to sign into BofA systems using their own credentials, and in order to further conceal his opening of new accounts on behalf of NRA Applicants in violation of BofA's AML-CIP Programs, defendant QI used the BofA credentials of other BofA employees to open accounts on behalf of NRA Applicants.

1            h.    In furtherance of this conspiracy, defendant QI and

2   his co-conspirators opened more than 400 bank accounts for the NRA

3   Applicants in violation of the AML-CIP Program and federal

4   regulations.

5   D.    OVERT ACTS

6            7.    In furtherance of the conspiracy and to accomplish its

7   object, on or about the following dates, defendant QI, CC1, and CC2,

8   and others known and unknown to the Acting United States Attorney,

9   committed various overt acts in Los Angeles County, within the

10  Central District of California, and elsewhere, including, but not

11  limited to, the following:

12       Overt Act No. 1:    On or about July 6, 2020, defendant QI

13  opened a BofA account ending in 0126 in the name of non-resident

14  alien D.W. falsely identifying D.W.'s city and state of residence.

15       Overt Act No. 2:    On or about July 23, 2020, defendant QI

16  opened a BofA account ending in 4114 in the name of non-resident

17  alien X.H. falsely identifying X.H.'s city and state of residence.

18       Overt Act No. 3:    On or about July 23, 2020, defendant QI

19  opened a BofA account ending in 9653 in the name of non-resident

20  alien X.Z. falsely identifying X.Z.'s city and state of residence.

21       Overt Act No. 4:     On or about July 24, 2020, defendant QI

22  opened a BofA account ending in 9325 in the name of non-resident

23  alien R.Y. falsely identifying R.Y.'s city and state of residence.

24  ///

25  ///

26

27

28

4

        Overt Act No. 5:    On or about July 24, 2020, defendant QI
opened a BofA account ending in 6732 in the name of non-resident
alien S.L. falsely identifying S.L.'s city and state of residence.


                              TRACY L. WILKISON
                              Acting United States Attorney


                              BRANDON D. FOX
                              Assistant United States Attorney
                              Chief, Criminal Division

                              STEVEN R. WELK
                              Assistant United States Attorney
                              Chief, Asset Forfeiture Section

                              DAN G. BOYLE
                              Assistant United States Attorney
                              Asset Forfeiture Section